### ALBERT W. BATES v. NANCY PHINNEY.

*Liability for rent—Construction of agreement.*

A three years' lease of farm lands began in March, 1877, and the rent was to be paid annually, October 15. September 2, 1878, the parties terminated the lease, but it was agreed that the tenant might keep possession until he could harvest his crops; that he was to pay no rent from that date; and that this stipulation was not to affect the rent to become due in October. *Held,* that this did not bind him to pay the rent for the whole year, but only until September 2, the date of the stipulation.

Rent is the consideration for occupancy, and there is no consideration for its payment when the enjoyment of the rented premises ceases.

An action for use and occupation will not lie where no actual use exists or is bargained for.

Error to Hillsdale. Submitted Jan. 14. Decided Jan. 26.

ASSUMPSIT. Defendant brings error. Reversed.

*Shepard & Fowle* for plaintiff in error.

*George A. Knickerbocker* and *Charles W. Pratt* for defendant in error.

CAMPBELL, J. This was an action for half a year's rent, claimed to be due from Bates under a lease from Ellen Lucas, mother and assignor of Mrs. Phinney.

In March, 1877, Bates took a written lease of a tract of 30 acres in Woodbridge, Hillsdale county, for three years—which would be until March, 1880. He paid $5 an acre for the wheat then in the ground, and $2.50 per acre for a lot called the southeast lot, and for the west lot he was to put up a fence. For the second and third years he was to pay $2.50 an acre for the land under cultivation. The rent was to be paid each year on October 15.

In 1878 there was some difficulty and litigation about matters which do not appear in the record; but which do not seem to have grown directly out of the lease. On the 2d of

September, 1878, a stipulation was made between Bates and Mrs. Lucas, whereby he agreed to discontinue his suit, and it was further agreed that he should give up immediate possession to Mrs. Lucas to enable her to put in fall crops, retaining the house and land on which his then growing crops stood for forty days, to enable him to harvest them; but it being in that immediate connection declared that Bates was "*to pay no rent from this date.*" After some further recitals it concluded as follows: "This stipulation being in full settlement of the matter in difference in this suit, but not to affect the rent to become due in October, by said Bates to said Ellen Lucas."

The only question of importance is whether under this stipulation Bates was to pay rent for the whole year ending March, 1879, or for the half-year ending about the date of the stipulation. The court below held that his payment to the latter date left him still indebted for the remaining half-year when he was out of possession.

We think this was erroneous. October was only the time fixed by the lease at the middle of the year to pay the year's rent. It is quite likely the chief value of the use of the land was in its cultivation. But the lease does not contain anything which indicates that the occupation from October to March was regarded as of no account. There was a house and other conveniences as well as land. And in stipulating for the occupancy of the house and premises for forty days after September 2, 1878, if the whole rent was to be paid in October for the year's occupancy till March, in spite of the surrender, it would have been absurd to speak of Bates being required to pay no rent from September, when in fact he was to pay for six months longer.

Rent is the consideration for occupancy, and there was no consideration for payment when enjoyment was to cease. We think taking the whole document together it merely meant that the surrender and termination of the lease before the rent-day arrived, should not exempt Bates from paying in October the rent due for the half-year's occupancy. There is nothing to support any larger promise, and the theory of

the action for use and occupation will not apply to a case where no actual use existed or was even bargained for. ·

Judgment must be reversed with costs and a new trial granted.

MARSTON, C. J. and GRAVES, J. concurred.

COOLEY, J. did not sit in this case. ·